UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
MIKHAIL TITOV,

          Plaintiff,

   -against-

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES; UR
MENDOZA JADDOU, Director of the
USCIS; MATHEW C. VARGHESE,
Director of the USCIS New York City
Asylum Office,

          Defendants.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 1:24-CV-5295(FB)

*Appearances:*
*For the Plaintiffs:*
MICHAEL SAMUEL
The Samuel Law Firm
1441 Broadway, Suite 6085
New York, New York 10018

JAMES O. HACKING III
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, Missouri 63122

*For the Defendants:*
DIANA E. MAHONEY
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Mikhail Titov, a Russian national living in Brooklyn, applied for asylum on April 5, 2022. After waiting in vain for more than two years, he filed this action under the Administrative Procedure Act ("APA") to compel the defendants—the United States Citizenship and Immigration, its director, and the director of its New

York City Asylum Office (collectively, "USCIS")—to adjudicate his application.[1]

USCIS now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is denied.

## I

The APA states that a district court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed [and] final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed[.]" 8 U.S.C. § 1158(d)(5)(A)(ii-iii). Titov alleges that USCIS failed to comply with those statutory deadlines in his case. *See* Am. Compl. ¶ 39.

USCIS responds that the statutory timeframe does not create any right enforceable under the APA, *see* 8 U.S.C. § 1158(d)(7), and that "processing times, standing alone, cannot support a finding of unreasonable delay." Defs'. Mem of

---

[1]Titov also sought relief under 28 U.S.C. § 1361, which gives district courts jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." He has since abandoned that claim. *See* Pl's. Mem. of Law at 14 ("Plaintiff removed mandamus relief [from his complaint] and is requesting relief under the APA only.").

Law at 16 (citing *Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020)). It

acknowledges, however, that "courts regularly consider the six factors in

*Telecomms. Research & Action Ctr. ("TRAC") v. FCC*, 750 F.2d 70, 80 (D.C. Cir.

1984)," and that "a timetable provided by Congress" is one of those factors.

Defs.' Mem of Law at 16 & n.8.

> There are, in total, six *TRAC* factors:
>
> (1) the time agencies take to make decisions must be governed by a
> rule of reason; (2) where Congress has provided a timetable or other
> indication of the speed with which it expects the agency to proceed in
> the enabling statute, that statutory scheme may supply content for this
> rule of reason; (3) delays that might be reasonable in the sphere of
> economic regulation are less tolerable when human health and welfare
> are at stake; (4) the court should consider the effect of expediting
> delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the
> interests prejudiced by delay; and (6) the court need not find any
> impropriety lurking behind agency lassitude in order to hold that
> agency action is unreasonably delayed.

750 F.2d at 80 (cleaned up). As USCIS points out, many district judges in the

Second Circuit have dismissed complaints based on a consideration of those

factors. *See* Defs.' Mem. of Law at 17-21 (citing cases).

The verdict is not unanimous, however. In a recent decision, Judge Bulsara

of this Court noted that the Second Circuit has not addressed whether the *TRAC*

factors should be considered on a motion to dismiss and cited a Fourth Circuit case

for the proposition that "a claim of unreasonable delay is necessarily fact

dependent . . . and should not typically be resolved at [the motion to dismiss] stage." *Ji v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-4815-SJB, 2026 WL 171879, at *4 & n.3 (E.D.N.Y. Jan. 22, 2026) (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)); *see also id.* (citing cases from the Northern and Central Districts of California). Ultimately, he applied the *TRAC* factors and, concluding that four "slightly favor[ed]" the plaintiff while two were neutral, denied the motion to dismiss. *Id.* at *4-*6.

In reaching that conclusion, Judge Bulsara noted that USCIS "rest[ed] entirely on facts outside of the Amended Complaint," citing "numerous government webpages, reports, and press releases addressing the adoption of the LIFO ["last-in first-out"] system and parallel FIFO ["first-in first-out"] track, the rationales for adopting these systems, and other demands facing the agency that allegedly constrain resources available to adjudicate asylum applications." *Id.* at *4. He disregarded those documents except insofar as he could take judicial notice of them as establishing that the statements therein were made. *See id.* (citing *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022)); *see also id.* ("[T]he Court may not rely on the document for the truth of the matters asserted therein." (internal quotation marks omitted)).

As in *Ji*, USCIS has cited numerous documents explaining the methods it

uses to process asylum applications, its reasons for switching from a FIFO to a LIFO system, and the effect of allowing an applicant to "skip the line" on other applications. Since none of those facts is alleged in Titov's complaint or a proper subject of judicial notice, the Court declines to consider them at this stage.

II

Although the Court agrees with Judge Bulsara that the analysis must be limited to the allegations of the complaint, it takes the additional step of holding, as the Fourth Circuit has done, that the *TRAC* factors are too fact-sensitive—and, perhaps more importantly, rely on facts that are almost likely unknown to the plaintiff at the pleadings stage—to be considered on a motion to dismiss. It is far more sensible to address those factors in the context of a motion for summary judgment made after a full opportunity for discovery. The Court's task at this stage is simply to decide whether Titov has alleged, first, "that the agency failed to take a discrete agency action that it is required to take, and, second, that the delay was unreasonable." *Ji*, 2026 WL 171879, at \*3 (quoting *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023)).

It is undisputed that USCIS has a non-discretionary duty to rule on asylum applications. The second element—that USCIS has unreasonably delayed adjudicating Titov's application—raises two questions.

5

First, Titov's allegation that he applied for asylum on April 5, 2022, means that he has now been waiting for almost four years. "[C]ourts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable." *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 225 (E.D.N.Y. 2021). But those courts have reached that conclusion based on application of the *TRAC* factors to facts not alleged in the complaint. In the Court's view, neither aspect of that analysis is correct. The length of the delay, in and of itself, is not dispositive.

Second, the length of the delay and the fact that it exceeds the statutory timelines are essentially the only concrete allegations in Titov's complaint. "Courts have consistently held that asylum application processing times, on their own, do not support a finding of unreasonable delay." *He v. Garland*, No. 23-CV-05386 (EK), 2024 WL 3708146, at *3 (E.D.N.Y. Aug. 7, 2024).

As noted, however, facts concerning the reasons for the delay are almost always known only to USCIS at this stage. In that respect, they are analogous to an employer's reasons for terminating an employee: The plaintiff in an employment discrimination case typically knows only that he or she has been terminated (or subjected to some other adverse employment action). The employee may *suspect* unlawful discrimination but is rarely, if ever, in possession of sufficient facts to

6

prove it when the complaint is filed.

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court held that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case," and that a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 511-12 (internal quotation marks omitted). Seven years later, however, it held that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Second Circuit addressed the befuddling interplay between *Swierkiewicz* and *Iqbal* in *Littlejohn v. City of New York*, 795 F.3d 297 (2015). After closely examining each case, it concluded that "*Iqbal's* requirement applies to Title VII complaints of employment discrimination, but does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet." *Id.* at 310. The *McDonnell Douglas* presumption, it held, "reduces the facts needed to be *pleaded* under *Iqbal.*" *Id.* In other words, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 311.

7

Applying the same logic, the Court concludes that a plaintiff challenging the delay in USCIS's adjudication of his or her asylum application must allege sufficient facts to give "plausible support" to a "minimal inference" that the delay has been unreasonable. Although the burden of proving unreasonableness remains with the plaintiff, the burden of *production* shifts to USCIS to explain the reasons for the delay. Such facts can be developed during discovery and then presented in a motion for summary judgment, at which point the Court will be in a much better position to apply the *TRAC* factors and potentially decide the issue as a matter of law.

The Court further concludes that Titov's allegation that the delay in his case exceeded the statutory timeframe makes it at least plausible that the delay was unreasonable. Although that timeframe is not mandatory, it is the only thing the Court can consider at this stage. Discovery will no doubt reveal additional facts suggesting that USCIS's noncompliance was nevertheless reasonable in the circumstances, but, as matters now stand, the delay is presumptively unreasonable.

**III**

For the foregoing reasons, USCIS's motion to dismiss is denied. The Court repeats that its disposition on the motion is without prejudice to USCIS's right to

8

make a motion for summary judgment on the same grounds once discovery is

complete.

      **SO ORDERED.**

                                       _/S/ Frederic Block_____
                                         FREDERIC BLOCK
                                         Senior United States District Judge

Brooklyn, New York
March 10, 2026